## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JACOB SCHEINER RETIREMENT ACCOUNT, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>    v.<br><br>CA, INC., MICHAEL GREGOIRE, JENS ALDER, RAYMOND BROMARK, JEAN HOBBY, ROHIT KAPOOR, JEFFREY KATZ, KAY KOPLOVITZ, CHRISTOPHER LOFGREN, and RICHARD SULPIZIO,<br><br>               Defendants. | Case No.<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMAND |

Plaintiff Jacob Scheiner Retirement Account ("Plaintiff"), on behalf of itself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through its counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for its Class Action Complaint:

## NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder class action brought by Plaintiff on behalf of itself and all other public stockholders of CA, Inc. ("CA" or the "Company") against CA and the members of CA's Board of Directors (the "Board" or the "Individual Defendants," and together with CA, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction,

pursuant to which CA will be acquired by Broadcom Inc. ("Broadcom"), through its wholly-owned subsidiary Collie Acquisition Corp. ("Merger Sub") (the "Proposed Transaction").

2.      On July 11, 2018, CA and Broadcom issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated July 11, 2018 ("Merger Agreement") to sell CA to Broadcom.  Under the terms of the Merger Agreement, each CA stockholder will receive $44.50 for each share of CA common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $18.9 billion.

3.      On August 10, 2018, CA filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement").  The Proxy Statement, which recommends that CA stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections; (ii) the valuation analyses performed by CA's financial advisor, Qatalyst Partners LP ("Qatalyst"); and (iii) the background of the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as CA stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4.      In short, unless remedied, CA's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of CA.

9.      Defendant CA is a Delaware corporation, with its principal executive offices at 520 Madison Avenue, New York, New York 10022.  CA creates software that fuels transformation for companies and enables them to seize the opportunities of the application economy.  CA's common stock trades on the NASDAQ Global Select Market under the ticker symbol "CA."

10.     Defendant Michael Gregoire ("Gregoire") has been Chief Executive Officer ("CEO") and a director of the Company since 2013.

11.     Defendant Jens Alder ("Alder") has been a director of the Company since 2011.

12.     Defendant Raymond Bromark ("Bromark") has been a director of the Company

- 3 -

since 2007.

13.    Defendant Jean Hobby ("Hobby") has been a director of the Company since 2018.

14.    Defendant Rohit Kapoor ("Kapoor") has been a director of the Company since 2011.

15.    Defendant Jeffrey Katz ("Katz") has been a director of the Company since 2015.

16.    Defendant Kay Koplovitz (Koplovitz") has been a director of the Company since 2008.

17.    Defendant Christopher Lofgren ("Lofgren") has been a director of the Company since 2005.

18.    Defendant Richard Sulpizio ("Sulpizio") has been a director of the Company since 2009.

19.    Defendants Gregoire, Alder, Bromark, Hobby, Kapoor, Katz, Koplovitz, Lofgren, and Sulpizio are referred to herein as the "Board" or the "Individual Defendants" and collectively with CA, as the "Defendants."

## OTHER RELEVANT ENTITIES

20.    Broadcom is a Delaware corporation headquartered in San Jose, CA.  It is a leading designer, developer and global supplier of a broad range of digital and analog semiconductor connectivity solutions.  Broadcom common stock trades on the NASDAQ Global Select Market under the ticker symbol "AVGO."

21.    Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Broadcom.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own CA common stock (the "Class").  Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

23.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

24.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of August 9, 2018, there were approximately 418,165,884 shares of Company common stock outstanding.  All members of the Class may be identified from records maintained by CA or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

25.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

a)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

26.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

27.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

28.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Company Background and Proposed Transaction

29.     CA is a global leader in software solutions that simplify complex enterprise environments.  Its solutions enable customers to plan, develop, automate, manage and secure applications across mobile, cloud, distributed and mainframe platforms.  Many of the largest companies in the world, including most of the Fortune 500 and many government agencies, rely on CA software to help manage and secure their hybrid cloud environments.

30.     The Company operates through three segments:

(i) *Enterprise Solutions* segment includes a broad range of software planning, development, and management tools that help customers with secure application development, infrastructure management, automation, and identity-centric security solutions.  These products are designed for mobile, cloud, and distributed computing environments and run on industry standard servers;

(ii) *Mainframe Solutions* segment includes solutions for the IBM z Systems®

platform, which runs many of CA's largest customers' mission critical business applications. CA's Mainframe Solutions help customers improve economics by increasing throughput and lowering cost per transaction, increasing business agility through DevOps tooling and processes, increasing reliability and availability of operations through machine intelligence and automation solutions, and protecting enterprise data with security and compliance; and

(iii) *Services* segment helps customers reach their information technology ("IT") and business goals primarily by enabling the rapid implementation and adoption of CA's software solutions.  CA's Services team consists of experienced professionals who provide a variety of services, such as consulting, implementation, application management services, education and support services, to both commercial and government customers.   With approximately 900 certified consultants, architects, project managers and advisors located in 31 countries and an extensive partner ecosystem, CA Services works with customers to navigate complex business and technology challenges.

**The Proposed Transaction**

31.     On July 11, 2018, CA and Broadcom issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> San Jose, CA and New York, NY – July 11, 2018 – Broadcom Inc. (NASDAQ:AVGO), a leading semiconductor device supplier to the wired, wireless, enterprise storage, and industrial end markets, and CA Technologies (NASDAQ:CA), one of the world's leading providers of information technology (IT) management software and solutions, today announced that the companies have entered into a definitive agreement under which Broadcom has agreed to acquire CA to build one of the world's leading infrastructure technology companies.

> Under the terms of the agreement, which has been approved by the boards of directors of both companies, CA's shareholders will receive $44.50 per share in cash. This represents a premium of approximately 20% to the closing price of CA common stock on July 11, 2018, the last trading day prior to the transaction announcement, and a premium of approximately 23% to CA's volume-weighted

average price ("VWAP") for the last 30 trading days. The all-cash transaction represents an equity value of approximately $18.9 billion, and an enterprise value of approximately $18.4 billion.

Hock Tan, President and Chief Executive Officer of Broadcom, said, "This transaction represents an important building block as we create one of the world's leading infrastructure technology companies. With its sizeable installed base of customers, CA is uniquely positioned across the growing and fragmented infrastructure software market, and its mainframe and enterprise software franchises will add to our portfolio of mission critical technology businesses. We intend to continue to strengthen these franchises to meet the growing demand for infrastructure software solutions."

"We are excited to have reached this definitive agreement with Broadcom," said Mike Gregoire, CA Technologies Chief Executive Officer. "This combination aligns our expertise in software with Broadcom's leadership in the semiconductor industry. The benefits of this agreement extend to our shareholders who will receive a significant and immediate premium for their shares, as well as our employees who will join an organization that shares our values of innovation, collaboration and engineering excellence. We look forward to completing the transaction and ensuring a smooth transition."

The transaction is expected to drive Broadcom's long-term Adjusted EBITDA margins above 55% and be immediately accretive to Broadcom's non-GAAP EPS. On a combined basis, Broadcom expects to have last twelve months non-GAAP revenues of approximately $23.9 billion and last twelve months non-GAAP Adjusted EBITDA of approximately $11.6 billion.

As a global leader in mainframe and enterprise software, CA's solutions help organizations of all sizes develop, manage, and secure complex IT environments that increase productivity and enhance competitiveness. CA leverages its learnings and development expertise across its Mainframe and Enterprise Solutions businesses, resulting in cross enterprise, multi-platform support for customers. The majority of CA's largest customers transact with CA across both its Mainframe and Enterprise Solutions portfolios. CA benefits from predictable and recurring revenues with the average duration of bookings exceeding three years. CA operates across 40 countries and currently holds more than 1,500 patents worldwide, with more than 950 patents pending.

**Financing and Path to Completion**

Broadcom intends to fund the transaction with cash on hand and $18.0 billion in new, fully-committed debt financing. Broadcom expects to maintain an investment grade rating, given its strong cash flow generation and intention to rapidly de-leverage.

The transaction is subject to customary closing conditions, including the approval of CA shareholders and antitrust approvals in the U.S., the EU and Japan.

Careal Property Group AG and affiliates, who collectively own approximately 25% of the outstanding shares of CA common stock, have entered into a voting agreement to vote in favor of the transaction.

The closing of the transaction is expected to occur in the fourth calendar quarter of 2018.

**Insiders' Interests in the Proposed Transaction**

32.    CA insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and CA's public stockholders.

33.    Company insiders stand to reap substantial financial benefits for securing the deal with Broadcom.  According to the Proxy Statement, certain CA equity awards, including options to purchase shares of CA common stock, restricted stock unit awards, performance share or performance share unit awards, restricted shares awards held by its executive officers and deferred stock unit awards held by its directors that are outstanding immediately prior to the closing of the merger will be converted into merger consideration or assumed by Broadcom at the effective time of the merger.  The following table sets forth the consideration the Company's executive officers and directors stand to receive in connection with the Proposed Transaction:

| Executive Officers | Number of Shares Held(#) | Value of Shares Held($)(1) | Number of Shares Subject to Vested CA Options(#) | Merger Consideration for Vested CA Options($)(2) | Number of Shares Subject to Unvested CA Options to be Assumed(#) | Value of Unvested CA Options to be Assumed ($)(2) | Number of Shares Subject to CA RSU Awards and CA PSU Awards to be Assumed(#) | Value of CA RSU Awards and CA PSU Awards to be Assumed ($)(1) | Number of Shares Subject to CA RS Awards to be Assumed(#) | Value of CA RS Awards to be Assumed ($)(1) | Total Value of Unvested CA Equity Awards to be Assumed($) (1)(2)(3)(5) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Michael Gregoire | 275,468 | 12,258,326 | 1,989,562 | 33,395,845 | 826,476 | 9,189,329 | 570,882 | 25,404,249 | 127,914 | 5,692,173 | 40,285,751 |
| Lauren Flaherty | 69,576 | 3,096,132 | 528,473 | 7,457,766 | 206,333 | 2,280,215 | 143,789 | 6,398,611 | 31,555 | 1,404,198 | 10,083,024 |
| Ava Hahn | — | — | — | — | 70,294 | 648,111 | 64,069 | 2,851,071 | 11,337 | 504,497 | 4,003,679 |
| Jacob Lamm | 45,682 | 2,032,849 | 55,032 | 724,966 | 82,088 | 914,861 | 56,659 | 2,521,326 | 12,699 | 565,106 | 4,001,293 |
| Kieran McGrath | 32,612 | 1,451,234 | 34,783 | 446,926 | 151,869 | 1,645,247 | 97,023 | 4,317,524 | 28,198 | 1,254,811 | 7,217,582 |
| Paul Pronsati | 41,252 | 1,835,714 | 95,489 | 1,284,725 | 89,817 | 1,001,488 | 62,157 | 2,765,987 | 13,893 | 618,239 | 4,385,714 |
| Ayman Sayed | 41,491 | 1,846,350 | 13,858 | 140,659 | 228,467 | 2,585,855 | 171,861 | 7,647,815 | 35,029 | 1,558,791 | 11,792,461 |
| Michael Bisignano(3) | 49,580(4) | 2,206,310 | — | — | — | — | 30,282(3) | 1,347,549 | — | — | 1,347,549 |
| Adam Elster(5) | 3,205(4) | 142,623 | 56,768 | 719,617 | 240,381(6) | 2,660,528 | 83,542(5)(6) | 3,717,619 | 36,819(6) | 1,638,446 | 8,016,593(6) |

34.     Furthermore, if they are terminated in connection with the Proposed Transactions CA's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Directors | Number of Shares Held(#) | Value of Shares Held($) [1] | Number of Shares Subject to CA DSU awards(#) | Merger Consideration for CA DSU awards($) [1] |
|---|---|---|---|---|
| Jens Alder | — | — | 47,720 | 2,123,540 |
| Raymond Bromark | 1,000 | 44,500 | 74,968 | 3,336,076 |
| Jean Hobby | — | — | 2,684 | 119,438 |
| Rohit Kapoor | 20,000 | 890,000 | 66,460 | 2,957,470 |
| Jeffrey Katz | — | — | 23,362 | 1,039,609 |
| Kay Koplovitz | — | — | 63,962 | 2,846,309 |
| Christopher Lofgren | — | — | 92,796 | 4,129,422 |
| Richard Sulpizio | — | — | 60,048 | 2,672,136 |
| Laura Unger [2] | — | — | 79,851 | 3,553,370 |
| Arthur Weinbach [3] | 25,000 | 1,112,500 | 135,534 | 6,031,263 |

## The Proxy Statement Contains Material Misstatements or Omissions

35.     The Defendants caused the materially incomplete and misleading Proxy Statement to be filed with the SEC.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek to exercise their appraisal rights.

36.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) the valuation analyses performed by CA's financial advisor, Qatalyst, in support of its fairness opinion; and (iii) the background of the Proposed Transaction.

37.     Accordingly, CA stockholders are being asked to vote for the Proposed Transaction or exercise their appraisal rights without all material information at their disposal.

### Material Omissions Concerning the Company's Financial Projections

38.     The Proxy Statement is materially deficient because it fails to disclose material information relating to the Company's financial projections, relied upon by CA's financial

advisor Qatalyst.

39.     According to the Proxy Statement, in connection with Qatalyst's *Illustrative Discounted Cash Flow Analysis* of CA, Qatalyst added "the estimated cash balance of CA as of June 30, 2018 (excluding notional pooling), as provided by CA's management" and subtracted "the estimated debt outstanding of CA as of June 30, 2018, as provided by CA's management, and the implied net present value of CA's estimated cash tax charges related to the ASC 606 transition and related to the repatriation of cash associated with the Tax Cuts and Jobs Act of 2017 as of June 30, 2018, as provided by CA's management. . . ." Proxy Statement at 35-36. However, the Proxy Statement fails to disclose these financial metrics.

40.     Additionally, the Proxy Statement fails to disclose for fiscal years 2019 through 2024 (i) depreciation and amortization; (ii) GAAP operating income; (iii) cash taxes; (iv) capital expenditures; (v) changes in net working capital; (vi) stock-based compensation expense; and (vii) cash tax charges related to the ASC 606 transition and related to the repatriation of cash associated with the Tax Cuts and Jobs Act of 2017.

41.     The omission of this information renders the statements in the "Opinion of Qatalyst Partners LP" and "Certain Financial Projections" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning Qatalyst's Financial Analyses**

42.     The Proxy Statement describes Qatalyst's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Qatalyst's fairness opinion and analyses fails to include key inputs and assumptions underlying the analyses.  Without this information, as described below, CA's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place

on Qatalyst's fairness opinion in determining whether to vote their shares in favor of the Proposed Transaction or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to CA's stockholders.

43.     With respect to Qatalyst's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the basis for utilizing net operating profit after tax multiples of 10.0x to 15.0x to derive the terminal value of CA; (ii) quantification of the actual inputs and assumptions underlying the discount rate range of 8.0% to 10.0%; (iii) CA's estimated cash balance as of June 30, 2018 (excluding notional pooling); (iv) CA's estimated debt outstanding as of June 30, 2018; and the implied net present value of CA's estimated cash tax charges related to the ASC 606 transition and related to the repatriation of cash associated with the Tax Cuts and Jobs Act of 2017 as of June 30, 2018.

44.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

45.     The omission of this information renders the statements in the "Opinion of Qatalyst Partners LP" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Sale Process***

46.     Further, the Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

47.     According to the Proxy Statement, in mid-2017, the Company engaged in negotiations with, and received indications of interest from, parties referred to in the Proxy Statement as "Sponsor A" and "Sponsor B."  However, the Proxy Statement fails to expressly

indicate whether CA entered into confidentiality agreements with Sponsor A, Sponsor B or any other party that indicated interest in a transaction with CA in 2017, and if so, whether they are still in effect and/or contain "don't ask, don't waive" standstill provisions that are presently precluding these parties from making a topping bid for the Company.

48.     The disclosure of the existence and terms of any confidentiality agreements CA entered into with any other party is crucial to CA stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company. Additionally, the Proxy Statement sets forth that "[o]n June 28, 2018 Mr. Gregoire contacted Martin Haefner, who is affiliated with the Careal parties, to ask Mr. Haefner to sign a confidentiality agreement so that Mr. Gregoire could discuss a confidential matter with him." Proxy Statement at 28.  The Proxy Statement, however, fails to disclose the substance of the confidential matter and whether it had a direct bearing on CA's largest stockholders, Careal Holding AG and its affiliates (collectively, the "Careal parties"), pledging their support in favor of a transaction with Broadcom.

49.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

50.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting or appraisal decision in connection with the

Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

51.     Plaintiff repeats all previous allegations as if set forth in full.

52.     During the relevant period, Defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

53.     By virtue of their positions within the Company, the Defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the Defendants.  It misrepresented and/or omitted material facts, including material information about (i) the Company's financial projections; (ii) the valuation analyses performed by CA's financial advisor, Qatalyst, in support of its fairness opinion; and (iii) the background of the Proposed Transaction.  The Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

54.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek to exercise their appraisal rights.

55.     By reason of the foregoing, the Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

56.     Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure Defendants' misconduct is corrected.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

57.     Plaintiff repeats all previous allegations as if set forth in full.

58.     The Individual Defendants acted as controlling persons of CA within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of CA, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

59.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

61.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

62.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' conduct, CA's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor on behalf of CA, and against Defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to CA stockholders;

C.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  August 15, 2018                  **O'KELLY ERNST & JOYCE, LLC**

                                   By  *Ryan M. Ernst*
                                      Ryan M. Ernst (#4788)
                                      Daniel P. Murray (#5785)
                                        901 N. Market St., Suite 1000
                                        Wilmington, DE 19801
                                        Tel.: (302) 778-4000
                                        Email: rernst@oelegal.com
                                              dmurray@oelegal.com

                                        *Attorneys for Plaintiff*

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*